## THE BANK OF MISSOURI vs. FRANCISCUS, and MARTIN vs. FRANCISCUS.

1. Under the Bankrupt law of 1841, property acquired by a defendant after his application for the benefits of the act, and before his final discharge, is exempt from liability for debts which were proveable under the act—and not only as against those actually proved.

2. It is not necessary that the bankrupt should shew in his schedule that a debt was not fiduciary, to entitle him to this exemption, as the law will not presume a breach of trust.

### APPEAL from St. Louis Court of Common Pleas.

GAMBLE, BATES & POLK *for Appellants.*

#### POINTS AND AUTHORITIES.

Upon the operation and effect of the Bankrupt act upon this case, the counsel of appellants assume the following positions as fully warranted by the law and the adjudged cases:

1. The Bankrupt act is an *exception*, in derogation of our general system of law, and therefore must be construed strictly. And hence it cannot take away rights of plaintiffs vested by the general law, unless the meaning of the Bankrupt act, plainly expressed, *must* have that effect.

2. The act gives no rights of property to the bankrupt, and imposes no restrictions upon the creditors, not coming in under the notice in bankruptcy and proving their claims, (except as to property conveyed to the assignee,) until final discharge and certificate. Under this head, it is insisted, that while the Bankrupt is left free to take the benefits the act gives him, the non-proving creditor is left equally free to adopt such legal remedies as are not taken away from him. And his claim being legal and valid, he is free to press it by legal process against any property of the Bankrupt, the title to which has not passed to the assignee. Certainly, the bankrupt, after the first decree, may acquire property; but he will hold it, like every other man, subject to legal liability. The *proving creditor*, by the terms of the 5th section of the act, has waived his right of action; but the *non-proving* creditor has waived nothing, and as the government has not yet exerted the sovereign power, in spunging out his debt and annulling his contract, there is nothing to restrain him from enforcing his judgment by the lawful means of a *fieri facias.*

3. Long before the discharge and certificate of the bankrupt, in this case, the claim of the appellant had ripened into judgment and execution. It no longer remained on the footing of a contract. It had become a debt adjudged, and that debt had been *discharged and paid,* by the actual levy upon property of the bankrupt. So that before the final discharge and certificate, the plaintiff's affairs with the bankrupt were past and finished. That such levy is a discharge of the debt, plainly appears by the following cases: Blair v. Caldwell, 2 Mo. Rep. 353; 4 Mass. Rep. 403; 7 Johns. R. 428; 12 do. 207; 6 Wend. Rep. 562. This doctrine is neither local nor new. It is laid down in 1 Salkeld 322, and distinctly declared in 2d Lord Raym. 1072.

4. The discharge and certificate cannot retroact, so as to make illegal and void that which was lawful and right when done. The statute does not say that the discharge shall have that effect. And such effect, if not positively unconstitutional, is against settled principles and the spirit of all our laws; for it would destroy vested rights on a mere notion of policy and by implication.

5. The bankrupt claims in this case, not only against the appellant, but against his own assignee, and all his creditors. So that if this Court should be of the opinion that the property levied on belonged to his assignee, then of course the rule must be discharged, leaving the assignee to assert his claim in his own way. In England, an execution levied on the goods of a bankrupt, after his

*The Bank of Missouri* vs. *Franciscus, and Martin* vs. *Franciscus.*

certificate of discharge was signed, but not allowed by the Lord Chancellor, was holden to bind the property and take it from the bankrupt. See Cullen vs. Myrick, 1 T. R. 361; 1 B. & P. 427.

6. When the bankrupt claims that his debt is cancelled by virtue of his discharge and certificate, it is his business to show that the debt is *not fiduciary*, which is not done in this case. The granting clause of the act excepts *fiduciary debts;* and it is a rule of law that whoever claims under a grant, must show himself beyond and clear of the exceptions of that grant. See §1 of Bankrupt act; Edon on Bankruptcy, in Law Library vol. 35, p. 317 at top; 7 T. R. p. 27; 1 Burr. Rep. 148, Rex vs. Jarvis; 1 Strange 497, Rex vs. Sparling; 6 T. R. 559.

It is the duty of bankrupt to state in his schedule the true nature of his debt, so as to show whether it be not *fiduciary;* and his omission to do so, is a fraud. 2 Howard U. S. Rep. 209, Chapman vs. Forsythe.

Leslie *for the Appellees.*

Napton, J., *delivered the opinion of the Court.*

In the two above entitled cases there was a motion before the Court of Common Pleas, by the appellees, for a rule on the bank, and on the plaintiff Martin, to show cause why certain proceedings on two executions should not be stayed. The facts upon which the application was based, were set forth in the petition of Franciscus, and were these: On the 7th April, 1842, J. M. Franciscus filed his petition in the District Court of the United States for the District of Missouri, for the benefit of the Bankrupt law, the petition being accompanied with a schedule of his debts; and among others, the debts upon which the above suits by the bank, and by Martin, were instituted. Such proceedings were had upon this petition, that on the 11th day of June, 1842, said Franciscus was declared a bankrupt, and an assignee appointed to whom all his estate was surrendered. On the 17th May, 1842, he opened a broker's office in the city of St. Louis, and, by means of capital lent by his friends, he carried on said business and acquired by earnings, and by way of loan and deposit, a considerable amount of bank notes, depreciated paper, gold and silver, of the nominal value of $3,876 04, which amount was, on the 26th January, 1843, seized by the sheriff of St. Louis county on the executions aforesaid, issued at the instance of the bank, and of Martin.

The motion to set aside the executions, and order a return of the money and effects to Franciscus, was sustained; and the only question to be determined here is the propriety of that decision.

By the fourth section of the act to establish a uniform system of bankruptcy throughout the United States, passed Aug. 19, 1841, it is provided that every bankrupt who has taken the steps prescribed by the act, and complied with all its provisions, shall be entitled to a certificate of final

discharge from all his debts. It is further declared in the same section that such discharge and certificate shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts, and other engagements *which are proveable* under this act. The third section provides that all the property of the bankrupt shall, by the decree of bankruptcy, be *ipso facto* diverted from the bankrupt, and vested in the assignee; and by the fifth section it is directed to be distributed *pro rata* among the creditors. The act is silent as to property acquired subsequently to the filing of the petition, and previous to the final decree of discharge. Shall the property thus acquired go to the assignee, or be liable to the creditors of the bankrupt whose debts were proveable under the act, or will it be the property of the bankrupt, subject only to his debts contracted subsequently to the petition in bankruptcy?

To answer this question we must rather look to the general scope and obvious policy of the Bankrupt law of 1841, than to any special provision directly applicable to the subject. There is no provision made in the law which directs any property to be scheduled, or to be delivered over to the assignee, except the property of the petitioner at the time of his petition. Nor does the assignee in his report to the Court, upon which is based the final discharge, notice any property except such as is mentioned in the schedule filed with the petition. If it had been the design of the law to subject subsequent acquisitions to the payment of claims accruing prior to the petition and proveable under the act, it would surely have contained some provision by which the amount of such gains could be ascertained and reached. It is conceded that the language of the act, in terms, prevents any creditor whose claim has been presented and proved according to the provisions of the act from proceedings against after-acquired property; but a distinction is sought to be made between a *proving* creditor and *one who declines coming* in for his share of the bankrupt's estate. The latter, it is supposed, may prefer his chance of getting his money out of the subsequent acquisitions of the bankrupt, to the dividend which the Bankrupt law would give him, and by declining to prove up his claim before the assignee, he forfeits his share of the estate, but is not debarred from all the remedies which the law provides against property which the bankrupt has acquired subsequently to his petition and previous to his final discharge. It would seem that such an interpretation of the act would tend very much to defeat its purposes. The object of the act is clearly to discharge the debtor from all his liabilities at the time of filing his petition. If any creditor may, at his pleasure, decline the provisions of the act for his

benefit, and by that means retain the power of harrassing the bankrupt until his final discharge is procured, it would frequently leave it in the power of creditors to defeat entirely the purposes of the law. Years may elapse between the filing of the petition and the final decree of discharge. Is it the policy of the law to prevent the bankrupt from engaging in any business during this interval, to suspend his industrial pursuits for an indefinite time? It is certainly very clear, that the Bankrupt law of 1841 did not design the bankruptcies therein provided for, to be within the power of creditors, but solely at the option of the debtors themselves, except in certain cases specified in the act. It would be very remarkable if, with this general plan in view, the act should have still permitted a single creditor to defeat the procurement of a final discharge, by withholding proof of his claim before the assignee, and levying his execution upon effects of the bankrupt acquired after the decree in bankruptcy. Such would be the inevitable result of such an interpretation of the law, unless we suppose that it contemplated a suspension of the bankrupt's pursuits, from the time of the petition until the final discharge—a supposition totally inconsistent with the general policy of the act.

An objection has been made in the argument at the bar, the schedule given in evidence as a part of the proceedings in bankruptcy, does not shew whether the debt was of a fiduciary character. If this were so in point of fact, we should not consider the objection a substantial one, for the law would not presume a breach of trust, where it was not shown to exist affirmatively. But so far as the attachment and execution of the plaintiff Martin, is concerned, the record shows that the debt was occasioned by the liability of the defendants as endorsers on a note for John Stagg & Co.

The judgment of the Court of Common Pleas is affirmed.